# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### EASTERN DIVISION

MICHELLE BYROM                                                          PETITIONER

vs.                                                    CIVIL ACTION NO.: 1:06CV142-MPM

CHRISTOPHER EPPS, ET AL.                                               RESPONDENTS

## ORDER DENYING  PETITIONER'S MOTION FOR LEAVE TO INVOKE DISCOVERY

Presently before the Court is Petitioner's request that this Court grant her leave to conduct discovery to support her claim that the prosecution withheld exculpatory evidence from the defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[1]  This Court denied without prejudice Petitioner's first request for discovery, and the parties have since completed briefing of the claims raised in the petition for writ of habeas corpus pending before the Court.  Respondents have complied with the Court's order to file a response to the instant discovery request, Petitioner has filed a reply thereto, and the Court is ready to rule.

Michelle Byrom, the petitioner in this action, was convicted of the capital murder of her husband Edward Byrom, Senior, pursuant to Mississippi Code Annotated § 97-3-19(2)(d), which defines capital murder as a murder "which is perpetrated by any person who has been offered or has received anything of value for committing the murder, and all parties to such a murder."  The evidence introduced at trial demonstrated that Petitioner contracted with Joey Gillis through her son, Edward Junior ("Junior"), to have Edward killed in exchange for $15,000, which she

---

[1] Docket entry no. 50.

intended to get through Edward's insurance proceeds. Junior testified against his mother at trial pursuant to a plea agreement that he later repudiated, but he eventually pled guilty to conspiracy to commit capital murder, accessory before the fact to grand larceny, and accessory before the fact to burglary with intent to commit assault. Gillis pled guilty to conspiracy and accessory after the fact to capital murder. Prior to trial, Petitioner, Junior, and Gillis all sought psychological evaluations, and the trial court appointed Dr. Criss Lott to conduct evaluations of all three in July 2000 and file his reports with the trial court. Petitioner maintains that, during the course of his evaluation, Junior confessed to Dr. Lott that Junior murdered his father. Petitioner argues that this clearly exculpatory evidence was never disclosed to defense counsel, and had it been disclosed, the State's theory of murder-for-hire would have been refuted and Junior's credibility undermined.

The basis for Petitioner's claim is a quote that is attributed to prosecutor Arch Bullard in a March 16, 2001, newspaper article. (See Pet. Memo Ex. 7-A and 7-B). The paper quotes Mr. Bullard as stating that the prosecution learned, while preparing for the Gillis trial, that Junior made "another conflicting statement to his psychologist" and that those statements could have "seriously compromised' [Junior]'s future testimony against Gillis." (Pet. Memo Ex. 7-A). Petitioner argues that this statement demonstrates that the prosecution and/or trial court was aware of statements exculpatory to Petitioner and failed to disclose them to the defense. She maintains that, as the State reached a plea deal with Junior prior to Junior testifying against her at trial, the State clearly had the evidence.

Petitioner argues that Dr. Lott has refused to speak to current counsel or provide a copy of Junior's report without a court order; therefore, she needs discovery in order to present her claim.

2

She maintains that if the prosecution had Junior's statement before he testified, then it was obliged to disclose it under *Brady*. She maintains that even if the prosecution did not receive the report until after trial, it still had to provide it to counsel for use in support of a new trial. She contends that the duty existed even if the evidence was in the form of otherwise confidential records. The only way to know when the State became aware of Junior's statements, she argues, is to ask the people involved.

The Court is permitted to allow Petitioner to engage in discovery only if and to the extent that good cause for the request is shown. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000); Rule 6 of the Rules Governing § 2254 Cases. A petitioner may establish "good cause" by showing that he may be entitled to relief if the facts specifically alleged are allowed to be more fully developed. *See, e.g.*, *Bracy v. Gramley*, 520 U.S. 899, 908-909 (1997); *see also Hill v. Johnson*, 210 F.3d 481, 487 (5th Cir. 2000) (noting petitioner may show good cause by establishing a prima facie case for relief).

*Brady v. Maryland* requires that the prosecution disclose evidence that is 1) favorable to the accused; and 2) material either to guilt or to punishment. *United States v. Bagley*, 473 U.S. 667, 674 (1985); *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Evidence is considered "material" where a reasonable probability exists that if the evidence had been disclosed, the result of the trial would have been different. *See Banks v. Dretke*, 540 U.S. 668, 698-99 (2004). A "reasonable probability" is shown when the suppression of the evidence undermines confidence in the outcome of the proceedings. *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). The United States Supreme Court has held that "[t]here are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it

is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner concedes that she has not presented a State court with her *Brady* claim based upon the withholding of Dr. Lott's report. While the claim would ordinarily be barred from federal habeas review for her failure to present it, she maintains that she is nonetheless entitled to a review of the merits because she can demonstrate that she is actually innocent as a gateway to receive consideration of the underlying *Brady* claim. Petitioner was eligible for the death penalty because the murder of Byrom, Sr., was a murder-for-hire. Evidence suggesting that Junior shot his father out of rage, she maintains, would have undermined that theory. She argues, therefore, that the evidence that potentially exists in Dr. Lott's report raises a reasonable probability that she would not have been sentenced to death had the substance of the report been presented at trial.

The actual innocence exception to the procedural default doctrine allows consideration of a defaulted claim where the petitioner presents new, reliable evidence that establishes that, "in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). In a capital sentencing context, actual innocence is established where the petitioner demonstrates "by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law." *Dretke v. Haley*, 541 U.S. 386, 393 (2004) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 336 (1992)).

4

In order for this Court to grant discovery, Petitioner must demonstrate reason for the Court to believe that she may be able to demonstrate an entitlement to relief if the facts of her claim are fully developed. *See Murphy v. Johnson*, 205 F.3d 809, 814 (5th Cir. 2000). To accomplish this, Petitioner must give the Court reason to believe that she could be entitled to relief on her *Brady* claim if discovery is granted. In order for evidence to be material under the *Brady* standard, the omitted evidence must create a reasonable doubt that otherwise did not exist. *See Graves v. Cockrell*, 351 F.3d 143, 153-54 (5th Cir. 2003) (citing *United States v. Agurs*, 427 U.S. 97 (1976)); *see also Ward v. Whitley*, 21 F.3d 1355, 1367 (5th Cir. 1994) ("A federal habeas court must allow discovery . . . only where a factual dispute, if resolved in the petitioner's favor, would entitle him to relief..").[2]

Even if the Court were to assume that Dr. Lott's report contains information that Junior confessed, and that the State knew of the information but failed to disclose it, Petitioner has not demonstrated that the evidence might allow her to prove an entitlement to relief on her *Brady* claim. On direct appeal, the Mississippi Supreme Court found that Junior admitted at trial that he had made statements that there was no murder conspiracy and that he had been the one to shoot his father. *Byrom v. State*, 863 So.2d 836, 871 (Miss. 2003). Junior admitted at trial that he made statements that he had killed his father because he was angry with him. (*See, e.g.,* Trial Tr. Vol. 14, 686-90; 740; 748-49). He also admitted that he and his mother passed letters containing information that they thought would be favorable to their defenses with the intent that

---

[2] The Court notes that petitioner must also demonstrate that the non-discovery of the allegedly impeaching or exculpatory evidence was not the result of a lack of due diligence. *See Graves*, 351 F.3d at 153-54. As the newspaper article giving rise to this claim was published in 2001, before Petitioner's direct appeal was filed, the basis of this claim was available during Petitioner's State court proceedings.

the letters be intercepted.  (*See id.* at 752-53).  Allowing Petitioner to engage in extensive

discovery to potentially demonstrate that Junior also made inculpatory statements to Dr. Lott

would not create reasonable doubt in the jury's mind where none previously existed.  Therefore,

the Court finds no reason to grant Petitioner the requested discovery, and the instant motion will

be denied.

        **SO ORDERED, THIS** the 14th day of September, 2010.


**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**